Filed 6/5/23 P. v. Witt CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RENAE LOUISE WITT,<br><br>    Defendant and Appellant. | G061305<br><br>(Super. Ct. No. 18CF0201)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Scott A. Steiner, Judge. Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

## INTRODUCTION

A jury convicted Renae Louise Witt of committing seven counts of medical insurance fraud in violation of Penal Code section 550, subdivision (a)(6). The trial court suspended imposition of sentence, placed Witt on two years of formal probation, and ordered her to serve 364 days in jail.

Witt contends the trial court violated her constitutional rights to cross-examine a witness, receive a fair trial, and present a defense by prohibiting her trial counsel from questioning a witness (her former medical assistant) on the details of the witness's prior convictions for theft-related felonies. We conclude Witt suffered no constitutional violation and therefore affirm.

## FACTS

Witt is a podiatrist. She saw patients on Tuesdays and Thursdays at her office in Tustin, California.

S.S. worked for Witt as her medical biller from 2006 until September 2017. E.S. worked for Witt as a medical assistant from 2010 until 2017. In 2010, before being hired by Witt, E.S. was convicted of several felony counts of a crime involving moral turpitude. E.S. did not recall whether she told Witt about the convictions before being hired.

E.S. assisted Witt in preparing "superbills," which are a form of billing submitted to insurance companies. E.S. would prepare the superbills using information provided by Witt, such as procedure and diagnosis code. E.S. never prepared a superbill that Witt did not know about. She prepared superbills only at Witt's direction.

Once the superbills were finalized, they were delivered to S.S., who would send them to the appropriate insurance company. Approximately between 2014 and 2017, E.S. hand delivered the superbills to S.S. S.S. never made additions or corrections to the superbills and relied entirely on the procedure and diagnosis codes provided by

2

Witt. Witt paid 6 percent of the amount collected from the insurance companies to S.S. E.S. did not receive extra compensation based on the amount collected from the insurance companies.

On one occasion, a patient directly contacted S.S. and complained that she had not received the treatment listed on her explanation of benefits. When S.S. informed Witt of the complaint, Witt responded that she was tired of not getting paid and was "breaking the codes out into separate dates." S.S. advised her such billing would amount to insurance fraud. On another occasion, S.S. noticed that Witt had sent her superbills for treating two patients on a holiday. When S.S. questioned those superbills, Witt directed her to change the date of service to the day before the holiday. On several occasions, Witt became upset and complained to S.S. about not being paid enough by the insurance companies and not making enough money.

In December 2016, a health care fraud senior investigator for Anthem, Inc. (Anthem) was notified that Anthem's special investigations unit had received a referral from a subscriber concerning services that were billed by Witt but not rendered. The subscriber reported that she had three appointments with Witt between April 26, 2016 and May 5, 2016 but, according to the explanation of benefits, Witt had performed surgery and other medical procedures. The subscriber contacted Anthem, which informed her it had been billed for eight additional appointments alleged to have taken place between April 27 and June 16, 2016.

An investigation was opened in late 2016. In response to the investigator's request, Witt turned over medical records for nine of her patients. After reviewing the records, the investigator concluded Witt had billed for services that were not rendered and Anthem had overpaid her. In March 2017, the investigator contacted the Orange County District Attorney's Office.

In September 2017, the district attorney's office obtained a warrant to search Witt's Tustin office for the medical records of six patients. District Attorney

3

Investigator Bruce Blanck executed the warrant and seized the records. Anthem provided the investigator a list of checks paid to Witt for services that were not provided. From the patient records and the list of checks, Blanck prepared a spreadsheet showing the amount billed and the amount paid by Anthem for nonexistent appointments for each of the six patients. The total amount billed by Witt for services not rendered and for nonexistent appointments was $174,395 and the total amount Anthem paid on those bills was $75,861.52.

Each of the six patients whose medical records had been seized testified at trial about the number of visits they had with Witt and the procedures she had performed. The patients' records and the list of Anthem checks revealed that Witt had billed for nonexistent appointments and/or for services not rendered.

## DISCUSSION

### I. *Background*

Before trial, Witt filed a motion in limine for permission to introduce evidence that, in 2009, E.S. had pleaded guilty to several counts of violating Penal Code section 484g, subdivision (a) (use of fraudulently acquired access cards). Witt claimed that E.S., while working at a urologist's office, had stolen debit cards from patients and used the cards to make purchases at a pharmacy. Witt argued the evidence of the prior convictions was relevant to show that E.S., not Witt, was responsible for committing insurance fraud.

The prosecutor opposed the motion on the grounds the convictions were remote in time and there was no evidence E.S. had committed insurance fraud. The trial court responded, "I think that the fact that one of your witnesses is a convicted felon is fair game for inquiry." The court concluded, however, that the nature of the felonies committed by E.S. was not important and therefore limited inquiry to the fact that E.S. had been convicted of a crime of moral turpitude. The court would not permit

4

questioning of E.S. about the facts underlying her convictions because the court did not want "a mini trial within a trial."

II. *The Trial Court Did Not Violate Witt's Constitutional Right to Cross-examine Witnesses by Limiting Questioning on E.S.'s Prior Felony Convictions*

Witt argues the trial court violated her constitutional right to cross-examine witnesses by barring cross-examination of E.S. on the details of her prior felony convictions. The right to confront and cross-examine witnesses is a fundamental right guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 476.) "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." (*Davis v. Alaska* (1974) 415 U.S. 308, 316.)

A prior felony conviction involving moral turpitude and evidence of the conduct underlying the conviction are admissible to impeach a witness. (*People v. Gutierrez* (2018) 28 Cal.App.5th 85, 88-89.) Notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness for the reasons stated in Evidence Code section 352[1] (*People v. Quartermain* (1997) 16 Cal.4th 600, 623) or by routine application of the other rules of evidence (*People v. Jones* (2013) 57 Cal.4th 899, 957).

However, Witt is not arguing the trial court erred under state law by limiting her cross-examination of E.S.: Witt emphasizes she is making only a constitutional claim under the Sixth and Fourteenth Amendments to the United States Constitution. To establish such a claim, Witt must show she was "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680.) A trial court's limitation on cross-examination of a witness does not violate the

---

[1] All further statutory references are to the Evidence Code.

5

confrontation clause "'unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted.'" (*People v. Williams* (2016) 1 Cal.5th 1166, 1192; see *People v. King* (2010) 183 Cal.App.4th 1281, 1314-1315 ["There is no Sixth Amendment violation at all unless the prohibited cross-examination might reasonably have produced a significantly different impression of credibility"].)

We do not believe the jury would have received a significantly different impression of E.S.'s credibility if Witt's counsel had been permitted to cross-examine E.S. further on her prior felony convictions. E.S. testified she had been convicted of felonies involving moral turpitude and that testimony in itself would have caused the jury to question E.S.'s veracity. Witt testified E.S. had failed to disclose on her employment application that she had been convicted of felonies. In closing argument, Witt's counsel emphasized E.S.'s lack of credibility by telling the jury three times that E.S. was a convicted felon, had never disclosed that fact to Witt, and had a financial motive to commit insurance fraud.

Further, the convictions were remote in time—about 13 years before trial and seven to eight years before the insurance fraud occurred—and involved the use of stolen debit cards, not fraudulent insurance billing. Regardless of the precise nature of the convictions, E.S. testified that since she was convicted, she had stayed out of trouble.

III. *The Trial Court Did Not Violate Witt's Constitutional Right to Due Process and to Present a Defense by Limiting Questioning on E.S.'s Prior Felony Convictions*

Witt argues exclusion of evidence regarding E.S.'s felony convictions deprived her of a constitutional right to due process (U.S. Const., 5th & 14th Amends.) and to present a defense (U.S. Const., 6th & 14th Amends). Witt again emphasizes she is not arguing that the trial court committed state law error by excluding that evidence under

6

section 352; rather, she argues that "irrespective of . . . section 352," the exclusion of that evidence violated her constitutional rights.

By not asserting state law error, Witt raises a conceptual problem: Can exclusion of evidence be a correct application of the state rules of evidence yet constitute a violation of an accused's constitutional rights? That issue arises because application of the ordinary rules of evidence, including application of section 352, does not violate due process or an accused's right to present a defense. (*People v. Nieves* (2021) 11 Cal.5th 404, 445.) The trial court in the present case excluded evidence regarding E.S.'s criminal convictions under section 352. That ruling was either erroneous (an abuse of discretion) or it was not erroneous (not an abuse of discretion) as a matter of state law. Because Witt is not contending the trial court erred under section 352, the trial court's ruling must be deemed to be not erroneous under state law. But as a correct application of the ordinary rules of evidence, the ruling would not have violated Witt's constitutional rights to a fair trial and to present a defense.

For purposes of the appeal, we shall assume that it is possible for a trial court ruling that excludes evidence under section 352 to be correct as a matter of state law but to constitute a violation of an accused's constitutional rights to due process and to present a defense.

Due process guarantees a criminal defendant the right to present evidence that is "vital" to the defendant's defense. (*People v. Babbitt* (1988) 45 Cal.3d 660, 684.) "'[T]he exclusion of evidence, vital to a defendant's defense, constitute[s] a denial of a fair trial in violation of constitutional due process requirements.'" (*Ibid.*; see *People v. Cornwell* (2005) 37 Cal.4th 50, 82, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421 ["The excluded evidence in the present case was not so vital to the defense that due process principles required its admission"].)

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to present "a complete defense." (*California v.*

7

*Trombetta* (1984) 467 U.S. 479, 485.) But "only evidentiary error amounting to a complete preclusion of a defense violates a defendant's federal constitutional right to present a defense." (*People v. Bacon* (2010) 50 Cal.4th 1082, 1104, fn. 4.) A ruling which does not constitute a refusal to allow a defendant to present a defense, but merely excludes certain evidence supporting the defense, does not violate the Sixth Amendment. (*People v. Cowan* (2010) 50 Cal.4th 401, 473-474.)

Witt was not completely precluded from presenting a defense. Her primary defense was third party culpability: She claimed either S.S. or E.S. was responsible for the fraudulent insurance billings. Witt does not contend she was denied the ability to present third party culpability evidence as to S.S., and Witt also was able to present all but one piece of her third party culpability evidence as to E.S. The only third party culpability evidence that Witt was not permitted to present was the precise crimes for which E.S. had been convicted and the conduct underlying those convictions. Exclusion of this one part of Witt's third party culpability defense did not completely, or even significantly, preclude Witt from presenting a defense.

For the same reasons, evidence regarding E.S.'s felony convictions was not *vital* to Witt's defense. In addition, those convictions were remote in time. Stealing debit cards and insurance fraud, though both forms of theft, are different enough that further evidence regarding E.S.'s felony convictions certainly "was not so vital to the defense that due process principles required its admission." (*People v. Cornwell, supra*, 37 Cal.4th at p. 82.)

DISPOSITION

The judgment is affirmed.


SANCHEZ, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


DELANEY, J.